[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, whose birth name was Eisenberg, and the defendant husband were married on September 6, 1989 in Brookfield, Connecticut.
Both of the parties had resided continuously in the State of Connecticut for at least one year prior to the filing of the dissolution complaint.
Two children were born to the wife, both are issue of the marriage, to wit: Terence Patrick Dignon, born January 12, 1987; and Sinead Catriona Dignon, born September 13, 1989.
From the evidence presented, the court finds that the marriage has broken down irretrievably, there is no prospect for any reconciliation, and a decree of dissolution is hereby entered.
Although these parties were not married until September 6, 1989, they represented to the world that they were husband and wife at least four years prior to their exchange of marital vows. In fact, the plaintiff used the defendant's surname as early as 1985.
This is the second marriage for the wife and the third marriage for the husband, who has three adult children from his previous marriage. There is no question, in the court's opinion, that the husband is a devoted father to all of his children. Although he has failed to pay child support in accordance with the court orders, the court senses that he does have a strong sense of parental responsibility.
He is fifty-seven (57) years of age and the wife is thirty-three (33). Both are in relatively good health. He is a full college professor with earnings of approximately $55,000 per year. He also occasionally earns a modest sum from summer employment. The wife has a Bachelor of Arts degree and several credits toward her Master's degree. She has worked during periods of the marriage as a waitress, secretary, teacher and typist, in addition to being the primary caretaker of the children. She does not, however, show any earnings on her present financial affidavit. Although she alluded to attempts to make a go of a "Mary Kay" business, the court is unimpressed by her efforts in that direction. The plaintiff is an articulate, intelligent woman CT Page 9779 who is capable of earning at least $300 per week at the present, and has the ability and education to earn considerably more if the effort were made.
Both of the parties impressed the court with their honest testimony. Basically, any disagreements were differences in perception rather than in substance. Basically, they both told the same story with a slight variation in the theme.
She claims that the husband's drinking and his self-ego were the primary cause of the breakdown. The husband admits to drinking but not to the extent claimed by his wife. The court is of the opinion that the truth lies somewhere between the "lip and the cup. "
The court feels that the major cause of the breakdown was perhaps the husband's drinking. The court does not, however, feel that he presents a threat to his children.
There is little dispute as to what assets there are in the marriage and where those assets were acquired. The husband has a TIAA-CREF retirement plan with an approximate value of $240,000. He also owns a house which is solely in his name and was acquired by him in 1970. This home has a net equity of approximately $100,000. The wife reports no assets in her own name.
The court, having considered all of the evidence, and having further considered the mandate of Connecticut General Statutes, Secs. 46b-81, 46b-82 and 46b-84, further finds and orders as follows:
1. Wife shall have sole custody of the minor children subject to the husband's following rights of visitation:
 a) Alternating weekends from Friday after school to Sunday at 7 p. m. The husband shall be responsible for picking up the children and returning them, except that it shall be the wife's duty to deliver and pick up the children on every fifth weekend.
 b) Mid-week visitation at least once a week to be arranged by the parties. CT Page 9780
 c) Four weeks during the summer to be arranged by the parties. If the parties are unable to so decide, the court will assign, upon request, specific summer visitation.
 d) Holidays will be alternated with the children spending Father's Day with the father and Mother's Day with the mother.
The court seriously considered the husband's request for joint custody. However, since the parties appear to have difficulty communicating, the court feels that, at this time, it would be in the children's best interest that sole custody be with the mother.
The mother shall consult the husband on all major decisions affecting the health, education, residence and general welfare of the children.
Further, the husband shall not consume any alcohol prior to or during his visitation with the children.
Neither party shall remove the children from New York or Connecticut, except for vacation purposes, without giving the other sixty (60) days notice.
The husband shall forthwith deliver the children's passports to the wife.
2. The husband shall pay to the wife as support for the children, the sum of $210 per week which the court finds to be in substantial compliance with the Guidelines. The deviation is justified on the anticipated expenses the husband will incur for transportation from Connecticut to New York.
This payment shall be secured by an immediate wage garnishment.
3. Husband shall maintain, as available through his employment, medical and dental insurance for the minor children. All deductible and unreimbursed medical expenses shall be divided equally between the parties. These orders are entered subject to the provisions of Connecticut General Statutes, Sec. 46b-84(c). CT Page 9781
4. No periodic alimony shall be paid to either party.
5. The husband shall be entitled to claim the children as federal and state tax exemptions. The wife will execute any and all documents necessary to effect the purpose.
6. The husband owed the wife $1,485 for past due court ordered support and medical reimbursement as of October 29, 1993. This amount shall be paid at the rate of $15 per week, commencing January 15, 1994.
7. The husband shall assign, by a qualified domestic relations order, 10 percent the present value of his TIAA-CREF retirement plan, together with 10 percent of whatever death benefits are available.
8. The husband shall name his children as equal beneficiaries of whatever policies of life insurance he presently has, until the children reach their majority. Satisfactory annual proof of this insurance shall be provided to the wife on or before January 15 of each year.
9. The following personal property shall become the property of the wife:
a) one-half camping equipment;
b) one-half photo albums;
 d) all books, paintings, clothing, etc., owned by wife prior to marriage;
e) vacuum cleaner and parts;
f) living room lamp;
g) Cuisinart food processor;
h) white Corningware;
i) juicer;
j) children's belongings and books. CT Page 9782
10. Each of the parties shall be responsible for his or her own liabilities.
11. The husband shall pay to the wife, within one hundred twenty (120) days, the sum of $1,000 in partial reimbursement of her attorney's fees.
12. The husband shall pay to the wife, as lump sum property distribution, the sum of $7,500, without interest, upon the happening of the first of the following events:
a) death of the husband;
b) five years from date;
c) refinance of the marital premises;
 d) sale or conveyance of the marital premises.
The $7,500 shall be secured by a mortgage deed and note to be prepared by the wife's attorney and exempted forthwith by the defendant.
Mihalakos, J.